IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLOBAL COMPUTING, INC. AND JONATHAN )
    LIN, )
                                                                                   )
    Plaintiffs                                    )              No. 05 C 6753
                                                                                )
              v.                                        )              The Honorable William J. Hibbler
                                                           )
HARTFORD CASUALTY INS. CO,        )
                                                           )
    Defendant.                                   )



## MEMORANDUM OPINION AND ORDER

When Microsoft Corporation sued Global Computing, Inc., and its President, Jonathan Lin, for distributing counterfeit copies of Microsoft programs, Global Computing and Lin turned to their insurer, Hartford Casualty Insurance Company. Hartford, however, declined to defend Global Computing and Lin, informing them the policy did not cover the acts alleged by Microsoft. After settling the underlying suit with Microsoft, Global Computing and Lin now have sued Hartford, alleging that Hartford breached its duty to defend. The parties have filed cross-motions for summary judgment.

As with most disputes arising out of insurance coverage, the facts in this case are undisputed. Global Computing and Lin (hereafter, collectively, Global Computing) carried an insurance policy with Hartford that provided Business Liability Coverage. (Def. 56.1 Statement ¶¶ 18-19). The policy provides coverage for personal and advertising injuries, which are at issue here, caused by offenses arising out of the insured's business. (Def. St. ¶ 19). The policy contains two provisions that define what constitutes "advertising injuries:"

1

G(15)(f)   Copying, in your 'advertisement,' a person's or organization's 'advertising idea' or 'style of advertisement;'

G(15)(g)   Infringement of copyright, slogan, or title of any literary or artistic work, in your 'advertisement.'

The policy also contains an exclusion for advertising injuries that arise out of any violation of any intellectual property rights.

B(p)(7)   This insurance does not apply to: 'personal and advertising injury' arising out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity. However, this exclusion does not apply to infringement, in your 'advertisement,' of (a) copyright; (b) slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or (c) title of any literary or artistic work.

In September 2005, Microsoft filed a complaint against Global Computing in which it alleged, among other things, that Global Computing had sold counterfeit Microsoft products, that it had sent Global Computing a cease and desist letter, and that even after receiving said letter Global Computing continued to sell computer systems with unauthorized copies of Microsoft products installed upon them. (Def. St. ¶¶ 8-12). Microsoft's Complaint included an allegation that this conduct, "including [Global Computing's] advertising activities and unauthorized use of Microsoft's marks to describe the items [it distributed,] . . . misappropriated Microsoft's advertising ideas and style of doing business." (Pl. St., Ex. 5 at ¶ 18). Microsoft also alleged that it "sustained [injuries and damages] directly and proximately caused by [Global Computing's] wrongful misappropriation of Microsoft's advertising ideas and style of doing business and infringement of Microsoft's copyrights, titles and slogans." (Pl. St., Ex. 5 at ¶ 19). The Complaint contained eight counts: copyright infringement, federal trademark infringement, false designation of origin, Illinois common law unfair competition, a violation of the Illinois Consumer Fraud and Deceptive Business Practices

2

Act, a violation of the Illinois Uniform Deceptive Trade Practices Act, and the imposition of both a constructive trust and an accounting. (Pl. St., Ex. 5).

After receiving Microsoft's Complaint, Global Computing sought to invoke its rights under the Policy and requested that Hartford defend it. (Pl. St., Ex. 6). Hartford reviewed the Complaint and the Policy, determined that no coverage existed, and declined to defend Global computing against the underlying Microsoft complaint. (Pl. St., Ex. 7). Global Computing eventually settled the complaint filed by Microsoft, and now seeks indemnification from Hartford.

The interpretation of an unambiguous contract is a question of law, and therefore summary judgment is often a particularly appropriate mechanism for resolving cases involving the interpretation of written contracts, *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004); *Int'l Union of United Auto., Aerospace and Agric. Implement Workers of Am. v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir.2003). Under Illinois law, whether a contract is ambiguous is itself also a question of law. *United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*, 220 F.3d 539, 543 n. 6 (7th Cir. 2000). A contract is ambiguous only if it is reasonably or fairly susceptible of more than one construction. *Thomas v. Pearle Vision Co.*, 251 F.3d 1132, 1137 (7th Cir. 2001). However, a contract is not ambiguous merely because the parties disagree as to its construction. *Kaplan v. Shure Brothers, Inc.*, 266 F.3d 598, 605 (7th Cir. 2001).

Under Illinois law, if the underlying complaint states a claim that even potentially or arguably falls within the scope of the coverage provided by the policy, the insurer is obligated to provide a defense to the insured. *General Agents Ins. Co. Of Am. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 155, 828 N.E.2d 1092, 1098 (2005). This is true even if the allegations appear groundless, false, or fraudulent. *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73,

578 N.E.2d 926, 930 (1991). Consequently, if an insured demands that its insurer defend it against a complaint that alleges facts within or potentially within the scope of policy coverage, the insurer must: 1) seek declaratory judgment regarding its obligations under the policy; or 2) defend under a reservation of rights. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 371, 710 N.E. 2d 1228, 1230-31 (1999). If the insurer chooses not to defend, and is later found to have breached its duty to defend, then it is estopped from denying coverage for policy reasons. *Id.*

Thus, a court's threshold inquiry compares the allegations in the underlying complaint to the pertinent provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 107-08, 607 N.E.2d 1204, 1212 (2002). In making this comparison, courts must construe underlying complaints liberally and resolve doubts in favor of the insured. *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 135, 761 N.E. 2d 1214, 1221 (2001); *Westchester Fire Ins. Co. v. G. Heilemen Brewing Co.*, 321 Ill. App. 3d 622, 632, 747 N.E.2d 955, 965 (2001). However, refusal to defend is justifiable if it is clear from the face of the underlying complaint that the facts alleged do not fall, even potentially, within the policy's coverage. *Outboard Marine Corp.*, 154 Ill. 2d at 107-08.

In determining whether a complaint states a claim that falls within the scope of coverage, courts give words their ordinary and accepted meaning, view those words in context, and consider contracts as a whole in order to ascertain the parties' intent. *Util. Audit, Inc.*, 383 F.3d at 687. At the same time, coverage does not depend on draftsmanship, but instead upon the misconduct alleged. *Hurst-Roche Eng'rs, Inc. v. Commercial Union Ins.*, 51 F.3d 1336, 1344 (7th Cir. 1995); *Lexmark Int'l, Inc.*, 761 N.E.2d at 1221. In other words, the factual allegations of the underlying complaint must demonstrate that the injury alleged falls potentially within the scope of the coverage.

4

Microsoft sprinkles its complaint with allegations that its injuries were caused by Global Computing's advertising activities. As noted earlier, however, the label put upon Global Computing's actions by Microsoft is not relevant. Instead, the Court must look to the facts Microsoft alleged. It is clear that Microsoft complained principally that Global Computing sold and distributed unauthorized copies of its software. Microsoft also complained that Global Computing used Microsoft's marks in its advertising to promote the sale of Global Computing's products that carried the unauthorized copies of Microsoft software. Specifically, Microsoft alleged that Global Computing used Microsoft's marks in their advertising to market the unlicensed copies of its software. (See Pl. Ex. 5, ¶ 18).

Global Computing insists that its act of advertising and marketing counterfeit or infringing copies of Microsoft software, using Microsoft logos, falls into the definition of advertising injury contained in Section G(15)(g). Although the Illinois Supreme Court has not spoken directly on the issue, an Illinois appellate court and two courts in this district have held that there must be a causal connection between the advertising activity and the alleged advertising injury and that merely alleging that an infringing product was advertised is insufficient to bring such action within the scope of coverage. *See Konami (America), Inc. v. Hartford Ins. Co. Of Ill.*, 326 Ill. App. 3d 874, 880, 761 N.E. 2d 1277, 1283 (2002) (advertising a patented invention does not constitute advertising injury); *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1032-33 (N.D. Ill. 1998) (injury caused by the trade secret misappropriation, not by any advertising activity); *Davila v. Arlasky*, 857 F. Supp. 1258, 1262-63 (N.D. Ill. 1994) (injury caused by manufacture, use and sale of infringing product, not by the fact that it was advertised). The mere advertisement of an infringing product, therefore, fails to give rise to advertising liability. *See Konami*, 761 N.E.2d at 879-880; *Winklevoss*,

991 F. Supp. at 1026-27; *Davila*, 857 F. Supp. at 1032. Count I of Microsoft's complaint (that Global Computing sold allegedly infringing products) falls squarely within the holdings of *Konami*, *Winklevoss*, and *Davila*. Global Computing fails to show any causal connection between its advertising activity and the underlying injury complained of by Microsoft. Nor does Global Computing's alleged use of the Microsoft logo bring its act within the scope of Section G(15)(f) of the Hartford policy. *See Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069 (7th Cir. 2004). Global Computing did not use Microsoft's advertising ideas, they used Microsoft's logos and marks.

Microsoft's allegations in the remaining counts, however, differ from those of the underlying plaintiffs in *Konami*, *Winklevoss* and *Davila*. In each of those cases, the underlying complaint, at best, mentioned advertising only in passing. *See Konami*, 761 N.E.2d at 879-880; *Winklevoss*, 991 F. Supp. at 1026-27; *Davila*, 857 F. Supp. at 1032. Further, in each instance, the underlying complaint failed to allege any connection between the advertising activity and the underlying injury. *See Konami*, 761 N.E.2d at 879-880; *Winklevoss*, 991 F. Supp. at 1026-27; *Davila*, 857 F. Supp. at 1032. In Microsoft's complaint, however, it alleged that Global Computing's advertising (which included the Microsoft logo) "were likely to cause confusion, mistake, or deception as to their source, origin, or authenticity." (Pl. Ex. 5 at ¶ 32). Consequently, Microsoft alleged that Global Computing traded upon Microsoft's goodwill and business reputation, causing injury to Microsoft. (Pl. Ex. 5 at ¶¶ 33-34).

The Court need not, however, determine whether the distinction between Microsoft's remaining claims and the underlying complaints of *Konami*, *Winklevoss*, and *Davila* brings Global Computing's acts within the scope of the Hartford policy. That is because the exclusion contained

in Section B(p)(7) of the policy plainly excludes the alleged infringing act from coverage. The insurance does not cover advertising injuries arising out of the violation of intellectual property rights "such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." While the exclusion is limited and does not include the advertisement of slogan, Microsoft's complaint alleges an injury resulting from the distribution of infringing products and the diminution of their marks caused by the advertising of those infringing products. Accordingly, Microsoft's Lanham Trademark Act claim, its false designation of origin claim, and its derivative claims fall plainly within this exception. *See Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 733 (7th Cir. 2006).

As the duty to indemnify is more narrow than the duty to defend, Hartford is also entitled to summary judgment on Global Computing's claim for indemnification. Therefore, the Court GRANTS Hartford's Motion for Summary Judgment on all Counts and DENIES Global Computing's Motion for Summary Judgment.

IT IS SO ORDERED.

3/14/07
Dated

Hon. William J. Hibbler
United States District Court